William M. Hogg (SBN 338196)
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
whogg@mybackwages.com

*Counsel for Dodge, California Plaintiffs,*
*and the Hourly Employees*

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA DODGE, Individually and for Others Similarly Situated,<br><br>               Plaintiff,<br><br>v.<br><br>QUALTEK WIRELESS LLC,<br><br>               Defendants. | Case No. 2:25-CV-00043-DAD-AC<br><br>**SECOND AMENDED COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>(1) Failure to Pay for All Hours Worked (Cal. Lab. Code § 204);<br><br>(2) Failure to Pay Overtime (Cal. Lab. Code § 510);<br><br>(3) Failure to Authorize and Permit and/or Make Available Meal and Rest Periods (Cal. Lab. Code §§ 226.7 and 512);<br><br>(4) Failure to Provide Timely and Accurate Itemized Wage Statements (Cal. Lab. Code § 226);<br><br>(5) Waiting Time Penalties (Cal. Lab. Code §§ 201-203); and<br><br>(6) Failure to Pay Overtime (29 U.S.C. § 201, *et seq.*)<br><br>**DEMAND FOR JURY TRIAL**<br><br>Original Complaint Filed:  Oct. 17, 2024<br>Removal Date:               Jan. 3, 2025<br>Trial Date:                   TBD |

**SUMMARY**

1.     Joshua Dodge ("Dodge") brings this collective action to recover unpaid wages and other damages from QualTek Wireless LLC. ("QualTek").

2.     Dodge brings his Fair Labor Standards Act ("FLSA") claims as a collective action on behalf of himself and others similarly situated.

3.     Dodge and California Plaintiffs (defined below) bring their California Labor Code claims individually.

4.     QualTek employed Dodge as one of its Hourly Employees (defined below).

5.     Dodge and California Plaintiffs regularly work more than 8 hours a day and 40 hours a workweek.

6.     Dodge and the Hourly Employees regularly work more than 40 hours in a workweek.

7.     But QualTek does not pay Dodge, California Plaintiffs, and the other Hourly Employees for all hours worked, including overtime (for Dodge and Hourly Employees) and double time hours (for Dodge and California Plaintiffs).

8.     Specifically, QualTek requires Dodge, California Plaintiffs, and the other Hourly Employees to "clock out" for 30 minutes each workday for a "meal period" but does not authorize, permit, and/or make available compliant meal periods (QualTek's "meal period policy").

9.     And when Dodge and California Plaintiffs work 12 hours in a workday, QualTek requires them to "clock out" for a second 30 minute meal period, but again, does not authorize, permit, and/or make available compliant meal periods.

10.     Instead, QualTek requires Dodge, California Plaintiffs, and the other Hourly Employees to remain on duty and perform work throughout their shifts.

11.     Dodge, California Plaintiffs, and the other Hourly Employees are thus not paid for the time they spend performing this "off the clock" work.

12.     QualTek also fails to authorize, permit, and/or make available compliant rest periods to Dodge and the other California Plaintiffs (QualTek's "rest period policy").

13.     Despite depriving Dodge and the other California Plaintiffs of compliant meal and

rest periods, QualTek does not pay Dodge and the other California Plaintiffs the required premium pay for the first missed meal and rest period each workday.

14.     In addition, QualTek fails to pay Dodge and the other Hourly Employees overtime at the required premium rates.

15.     Instead, QualTek pays Dodge and the other Hourly Employees non-discretionary retention bonuses and per diems.

16.     QualTek knows these bonuses and per diems should be, but are not, included in Dodge and the other Hourly Employees' "regular rates" of pay for the purpose of calculating overtime (QualTek's "bonus pay scheme" and "per diem pay scheme").

17.     QualTek's bonus and per diem pay schemes violate the FLSA by depriving Dodge and the other Hourly Employees of overtime at rates not less than 1.5 times their regular rates of pay – based on all remuneration – for hours worked after 40 in a workweek.

18.     QualTek's bonus and per diem pay schemes violate California law by depriving Dodge and the other California Plaintiffs of overtime at rates not less than 1.5 times their regular rates of pay – based on all remuneration – for hours worked after 8 in a workday and 40 in a workweek.

19.     Likewise, QualTek's bonus and per diem pay schemes violate California law by depriving Dodge and the other California Plaintiffs of double time at twice their regular rate of pay – based on all remuneration – for hours worked after 12 in a workday and after 8 on the seventh consecutive day of work.

20.     Further, as a result of its unlawful employment practices, QualTek also violates the accurate wage statement provisions of the California Labor Code and applicable Wage Order(s) by depriving Dodge and the other California Plaintiffs of wage statements that accurately reflect all their hours worked and all wages actually earned.

21.     And, as a result of QualTek's unlawful employment practices, Dodge and the other California Plaintiffs were not paid all wages due and owing upon termination of employment in a timely manner.

/ / /

**JURISDICTION & VENUE**

22.     This Court has jurisdiction over Dodge's claims pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA, 29 U.S.C. § 216(b).

23.     The Court has specific personal jurisdiction over QualTek because it purposefully availed itself of the benefits of the State by doing business in and employing workers in California, like Dodge and the California Plaintiffs.

24.     Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

25.     Specifically, QualTek employed Dodge and other Hourly Employees and failed to authorize and permit meal and rest periods in Sacramento County, California.

**PARTIES**

26.     QualTek employed Dodge as an hourly employee providing maintenance, repair, and upgrade services for telecommunication towers.

27.     QualTek classified Dodge as non-exempt and paid him by the hour.

28.     But QualTek did not pay him for all the hours he worked.

29.     Instead, QualTek required him to "clock out" for 30 minutes a day for so-called "meal periods," regardless of whether he actually received a *bona fide* meal period.

30.     QualTek did not authorize and permit Dodge to take meal periods.

31.     And Dodge did not actually receive *bona fide* meal periods.

32.     Likewise, QualTek did not authorize and permit Dodge to take *bona fide* 10-minute rest periods.

33.     And Dodge did not receive *bona fide* 10-minute rest periods.

34.     QualTek did not pay Dodge the required premium pay for the first missed meal and rest period each workday.

35.     And QualTek did not pay Dodge at 1.5 times his regular rate – based on all remuneration – for hours worked in excess of 8 a workday, 40 a workweek, and 2 times his regular rate – based on all remuneration – for hours worked in excess of 12 a workday and 8 on the seventh consecutive day of work.

36. Dodge's written consent to join this collective action was previously filed with the Superior Court of California, County of Sacramento, on December 5, 2024. *See* ECF 3-1.

37. The other Hourly Employees are likewise subject to QualTek's meal period policies and/or QualTek's bonus and per diem pay schemes.

38. The FLSA Collective of similarly situated employees is defined as:

> **All current and former non-exempt QualTek employees in the United States who were subject to QualTek's meal period policy, bonus pay scheme, and/or per diem pay scheme at any time from October 17, 2021 through final resolution of this Action (the "Hourly Employees").**

39. All individuals who submit their written consent to join the collective action automatically proceed as party plaintiffs. *See* 29 U.S.C. § 216(b); *Campbell v. City of Los Angeles* 903 F.3d 1090, 1104 (9th Cir. 2018) ("The FLSA leaves no doubt that 'every plaintiff who opts in to a collective action has party status.'") (quoting *Halle v. W. Penn Allegheny Health Sys., Inc.* 842 F.3d 215, 225 (3d Cir. 2016)).

40. All opt-in plaintiffs who worked for QualTek within the State of California are free to pursue remedies under the California Labor Code. As such, all opt-in plaintiffs who worked for QualTek within the State of California during the relevant California limitations periods are referred to throughout this Complaint as "California Plaintiffs."

41. QualTek is a Delaware limited liability company headquartered in Blue Bell, Pennsylvania.

42. QualTek has appeared in this Action and may be served through its counsel of record, Daniel V. Kitzes of Fox Rothschild LLP.

### FLSA COVERAGE

43. At all relevant times, QualTek was and is an "employer" within the meaning of 29 U.S.C. § 203(d).

44. At all relevant times, QualTek was and is an "enterprise" within the meaning of 29 U.S.C. § 203(r).

45. At all relevant times, QualTek has been part of an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1),

because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as cellphones, personal protective equipment, safety gear, tools, etc. – that have been moved in or produced for commerce.

46.     In each of the past three years, QualTek has had and has an annual gross volume of sales made or business done of not less than $1,000,000.

47.     At all relevant times, Dodge and the Hourly Employees were QualTek's "employees" within the meaning of 29 U.S.C. § 203(e)(1).

48.     QualTek uniformly subjects Dodge and the Hourly Employees to its meal break policies, bonus pay scheme, and/or per diem pay scheme.

49.     As a result, QualTek failed to pay them wages for all hours worked, including overtime hours at the correct rate of pay, in violation of the FLSA.

50.     QualTek's uniform meal period policy, bonus pay scheme, and/or per diem pay scheme, which deprive Dodge and the Hourly Employees of overtime compensation for all overtime hours worked at the correct overtime rate of pay, violate the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTS**

51.     QualTek bills itself as a "team of experienced leaders, qualified field technicians, and dedicated subcontractors [who] are committed to excellence, which is why all major U.S. carriers rely on us. Quality is an integral part of our culture and our name."[1]

52.     To meet its business objectives, QualTek employs workers such as Dodge and the other Hourly Employees to provide services to its clients.

53.     For example, Dodge worked for QualTek as an hourly employee from approximately April 2021 through September 2024, including in and around Sacramento County, California.

54.     Dodge's primary duties included gathering and preparing tools and materials at the jobsite, climbing telecommunication towers to replace and upgrade equipment on the towers,

---

[1]     https://www.linkedin.com/company/QualTek-llc/about/ (last visited Dec. 2, 2024).

1   such as antennas, radios, and wiring, and submitting reports detailing the work completed.

2        55.     Dodge was QualTek's hourly employee.

3        56.     QualTek paid Dodge approximately $35 an hour.

4        57.     Throughout his employment, QualTek required Dodge to report his hours to

5   QualTek for approval through its uniform timekeeping system.

6        58.     Throughout his employment, Dodge regularly worked more than 8 hours a workday

7   and 40 hours a workweek.

8        59.     Indeed, throughout his employment, Dodge typically worked 10-16 hours a day for

9   5-6 days a week (or 50 to 96 hours a week) "on the clock."

10       60.     And while exact job duties and precise locations worked may differ, Dodge and the

11  other Hourly Employees are all subject to QualTek's same or similar illegal policy – QualTek's

12  meal period policies, bonus pay scheme, and/or per diem pay scheme – for similar work.

13       61.     Despite knowing Dodge and the other Hourly Employees regularly work more than

14  40 hours in a workweek, QualTek does not pay them for all overtime hours worked.

15       62.     Despite knowing Dodge and the other California Plaintiffs regularly works more

16  than 8 hours in a day, and occasionally double time hours, QualTek does not pay them for all

17  overtime and double time hours worked.

18       63.     Instead, QualTek requires Dodge and the other Hourly Employees to "clock out"

19  for 30 minutes each workday for a "meal period," and "clock out" for a second "meal period" if

20  they worked 12 hours or more.

21       64.     But QualTek fails to authorize, permit, and/or make available *bona fide* and

22  compliant meal periods to Dodge and the other Hourly Employees.

23       65.     Indeed, QualTek simply assumes Dodge and the other Hourly Employees receive

24  compliant, *bona fide* meal periods each shift they work (or two meal periods for shifts exceeding

25  12 hours).

26       66.     But Dodge and the other Hourly Employees do not actually receive compliant, *bona*

27  *fide* meal periods.

28       67.     Instead, QualTek requires Dodge and the other Hourly Employees to remain on

duty and perform compensable work throughout their shifts, including during any attempted meal periods.

68.     During these attempted meal periods, Dodge and the other Hourly Employees are not free to engage in personal activities and are required to remain on duty.

69.     Rather, during any attempted meal periods, Dodge and the other Hourly Employees are necessarily forced to substantially perform their regular duties and responsibilities because, for example, they are suspended many feet in the air on a telecom tower.

70.     Thus, Dodge and the other Hourly Employees routinely spend their unpaid meal periods performing work for QualTek's – not their own – predominant benefit.

71.     And QualTek fails to authorize, permit, and/or make available compliant rest periods to Dodge and the other California Plaintiffs.

72.      Indeed, QualTek simply assumes Dodge and the other California Plaintiffs receive compliant, *bona fide* rest periods for every 4 hours they work or major fraction thereof.

73.     But Dodge and the other California Plaintiffs do not actually receive compliant, *bona fide* rest periods.

74.     Instead, QualTek requires Dodge and the other California Plaintiffs to remain on duty and perform compensable work throughout their shifts and are never fully relieved of their duties, including during any attempted rest periods.

75.     During any attempted rest period, Dodge and the other California Plaintiffs are not free to engage in personal activities.

76.     Rather, Dodge and the other California Plaintiffs are necessarily forced to substantially perform their regular duties and responsibilities during such rest periods.

77.     Thus, Dodge and the other California Plaintiffs routinely spend their rest periods performing work under QualTek's direction and control.

78.     Despite knowing it fails to provide Dodge and the other California Plaintiffs with compliant meal and rest periods, QualTek also uniformly fails to pay these employees the mandatory one hour of premium pay – at their regular rate of pay – for the first compliant meal and rest period they are denied each workday.

SECOND AMENDED COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Dodge v. Qualtek Wireless, LLC*, Case No. 2:25-CV-00043-DAD-AC

79.     Further, QualTek's wage-and-hour violations include routinely failing to maintain true and accurate records for Dodge and the other Hourly Employees.

80.     Specifically, QualTek fails to record all of Dodge's and the other Hourly Employee's hours worked by requiring them to "clock out" for "meal periods," but does not authorize, permit, and/or make available compliant, *bona fide* meal periods.

81.     And QualTek does not pay Dodge and the other California Plaintiffs all earned wages by failing to provide an hour of premium pay for missed meal and/or rest periods each workday and for the time they are "clocked out" for their "meal periods" but nonetheless working.

82.     QualTek also subjects Dodge and the other Hourly Employees to its bonus and per diem pay schemes.

83.     Specifically, QualTek pays these employees non-discretionary retention bonuses, as well as per diems.

84.     QualTek knows these bonuses and per diems must be, but are not, included in Dodge's and the Hourly Employees' regular rates of pay for the purpose of calculating overtime and, for Dodge, double time compensation.

85.     As a result of these policies, QualTek fails to pay Dodge and the other Hourly Employees overtime at a rate not less than 1.5 times their regular rates of pay – based on all remuneration– for hours worked in excess of 40 in a workweek, in violation of the FLSA.

86.     As a result of these policies, QualTek fails to pay Dodge and the other California Plaintiffs overtime at a rate not less than 1.5 times their regular rate of pay – based on all remuneration– for hours worked in excess of 8 a day and 40 a workweek, in violation of California law.

87.     Likewise, QualTek fails to pay Dodge and the other California Plaintiffs overtime at a rate not less than 2 times their regular rate of pay – based on all remuneration– for hours worked in excess of 12 a day and 8 on the seventh consecutive day of work, in violation of California law.

88.     Thus, QualTek uniformly fails to provide Dodge and the other California Plaintiffs

with accurate, itemized wage statements that accurately reflect their hours actually worked, wages actually earned, as well as meal and rest period premium pay they are owed, in violation of California law.

89. Finally, due to QualTek's meal and rest period policies, bonus pay scheme, and per diem pay scheme, QualTek fails to provide the Dodge and the other California Plaintiffs with full payment of all wages owed at the end of their employment, in violation of California law.

90. As Dodge and the other California Plaintiffs are owed unpaid wages and premium wages when their employment ended, and these amounts remain unpaid under QualTek's uniform policies and practices, QualTek uniformly fails to pay all wages due upon termination, in violation of California law.

91. As a result, QualTek is subject to waiting time penalties.

92. QualTek's violations of the FLSA and California law were willful, carried out in bad faith, and caused significant damage to Dodge and the other Hourly Employees.

### 29 U.S.C. § 216(b) COLLECTIVE ACTION ALLEGATIONS

93. Dodge realleges and incorporates all other paragraphs by reference.

94. Dodge brings his FLSA claims as a collective action on behalf of himself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

95. Like Dodge, the other Hourly Employees are uniformly victimized by QualTek's meal period policies, bonus pay scheme, and per diem pay scheme.

96. Other Hourly Employees worked with Dodge and indicated they were paid in the same manner, performed similar work, and were subject to QualTek's same meal period policies, bonus pay scheme, and per diem pay scheme.

97. Based on his experience with QualTek, Dodge is aware QualTek's meal period policies, bonus pay scheme, and per diem pay scheme were imposed on the other Hourly Employees.

98. The Hourly Employees are known to QualTek and can be readily identified through QualTek's business and personnel records.

99. The Hourly Employees are similarly situated in the most relevant respects.

100.    Even if their precise job titles, exact duties, and locations might vary, these differences do not matter for the purposes of determining their entitlement to their earned wages for all hours worked, overtime wages for all hours worked over 40 in a workweek – based on all remuneration.

101.    Rather, the Hourly Employees are held together by QualTek's meal period policies, bonus pay scheme, and per diem pay scheme, which systematically deprived Dodge and the other Hourly Employees of their earned overtime wages.

102.    QualTek's records reflect the number of hours the Hourly Employees recorded each workday and workweek.

103.    And QualTek's records show it failed pay for on-duty meal periods, as well as failed to incorporate all remuneration into the Hourly Employees' regular rates of pay.

104.    The back wages owed to Dodge and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

105.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to QualTek's records, and there is no detraction from the common nucleus of liability facts.

106.    Therefore, the issue of damages does not preclude collective action treatment.

107.    And Dodge's experiences are therefore typical of the experiences of the other Hourly Employees.

108.    Dodge has no interest contrary to, or in conflict with, the interests of other Hourly Employees that would prevent collective action treatment.

109.    Like each Hourly Employee, Dodge has an interest in obtaining the unpaid wages owed to them under the FLSA.

110.    Dodge and his counsel will fairly and adequately represent the Hourly Employees and their interests.

111.    Indeed, Dodge retained counsel with significant experience in handling complex class and collective action litigation.

112.    A collective action, such as this one, is superior to other available means for fair

and efficient adjudication of this matter.

113.    Absent this collective action, many Hourly Employees will not obtain redress for their injuries, and QualTek will reap the unjust benefits of violating the FLSA.

114.    Further, even if some of the Hourly Employees could afford individual litigation against QualTek, it would be unduly burdensome to the judicial system.

115.    Indeed, the multiplicity of actions would create a hardship for the Hourly Employees, the Court, and QualTek.

116.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

117.    The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

118.    The common questions of law and fact include:

    a.    Whether QualTek failed to pay the Hourly Employees earned wages for all overtime hours worked, including those worked "off the clock";

    b.    Whether QualTek paid the Hourly Employees non-discretionary retention bonuses that it excluded from their regular rates of pay for overtime purposes;

    c.    Whether QualTek paid the Hourly Employees per diems that it excluded from their regular rates of pay for overtime purposes;

    d.    Whether QualTek failed to pay the Hourly Employees overtime at rates not less than 1.5 times their regular rates of pay – based on all remuneration – for hours worked in excess of 40 in a workweek, in violation of the FLSA;

    e.    Whether QualTek's decision not to pay the Hourly Employees overtime wages for all hours worked, including overtime hours, was made in good faith;

    f.    Whether QualTek's decision not to include nondiscretionary

1    bonuses into the Hourly Employees' regular rates of pay was

2    made in good faith;

3    g.    Whether QualTek's decision not to include per diems into the

4          Hourly Employees' regular rates of pay was made in good faith;

5          and

6    h.    Whether QualTek's violations were willful.

7    119.   Dodge knows of no difficulty that will be encountered in the management of this

8    litigation that would preclude its ability to go forward as a collective action.

9    120.   As part of its regular business practices, QualTek intentionally, willfully, and

10   repeatedly violated the FLSA concerning Dodge and the other Hourly Employees.

11   121.   QualTek's illegal policies deprived Dodge and the other Hourly Employees of the

12   earned overtime wages they are owed under the FLSA.

13   **QUALTEK'S VIOLATIONS OF THE FLSA AND CALIFORNIA LAW WERE WILLFUL**

14   **AND DONE IN RECKLESS DISREGARD OF THE LAW**

15   122.   Dodge realleges and incorporates all other paragraphs by reference.

16   123.   QualTek knew it was subject to the overtime provisions of the FLSA, the California

17   Labor Code, and applicable IWC Wage Orders.

18   124.   QualTek knew the FLSA required it to pay non-exempt employees, including the

19   Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay –

20   based on all remuneration – for all hours worked after 40 in a workweek.

21   125.   QualTek knew the California Labor Code and applicable IWC Wage Order(s)

22   required it to pay non-exempt employees, including Dodge and the other California Plaintiffs,

23   earned wages for all hours worked.

24   126.   QualTek knew the California Labor Code and applicable IWC Wage Order(s)

25   required it to pay non-exempt employees, including Dodge and the other California Plaintiffs,

26   overtime wages at rates not less than 1.5 times their regular rates of pay – based on all

27   remuneration – for all hours worked after 8 in a workday and 40 in a workweek.

28   127.   QualTek knew each Hourly Employees worked more than 40 hours in at least one

workweek during the 3 years before this Complaint was filed because it required them to report their hours worked.

128.    QualTek knew Dodge and the other California Plaintiffs worked more than 8 hours in at least one workday and/or more than 40 hours in at least one workweek during the 3 years before this Complaint was filed because it required him to report his hours worked.

129.    QualTek knew it was subject to the California Labor Code and applicable IWC Wage Order's double-time provisions.

130.    QualTek knew the California Labor Code and applicable IWC Wage Order(s) required it to pay non-exempt employees, including Dodge and the other California Plaintiffs, double time wages at rates not less than 2 times his regular rates of pay – based on all remuneration – for all hours worked after 12 in a workday and 8 on his seventh consecutive workday.

131.    QualTek knew Dodge and the other California Plaintiffs worked more than 12 hours in a least one workday and/or more than 8 hours on the seventh consecutive workday at least once during the 3 years before this Complaint was filed because it required them to report their hours worked.

132.    QualTek knew the Hourly Employees were non-exempt employees entitled to overtime wages under the FLSA.

133.    QualTek knew Dodge and the other California Plaintiffs are non-exempt employees entitled to overtime and double-time wages under the Labor Code.

134.    QualTek knew the Hourly Employees were its hourly employees.

135.    QualTek knew it paid the Hourly Employees on an hourly basis.

136.    QualTek knew the California Labor Code and applicable IWC Wage Orders required it to provide employees, including Dodge and the other California Plaintiffs, with a 30-minute, duty free meal period for every five hours worked.

137.    QualTek knew the California Labor Code and applicable IWC Wage Orders required it to pay employees, including Dodge and the other California Plaintiffs, one hour of premium pay for each day they are denied a compliant meal period.

138.   QualTek knew Dodge and the other California Plaintiffs did not receive compliant meal periods.

139.   Nonetheless, QualTek did not pay Dodge and the other California Plaintiffs one hour of premium pay each day it denied them a compliant meal period.

140.   QualTek's failure to provide Dodge and the other California Plaintiffs with compliant meal periods was neither reasonable nor was its decision not to pay these employees one hour of premium pay each day it denied them a compliant meal period made in good faith.

141.   And QualTek knew it required the Hourly Employees to "clock out" for 30 minutes each workday for a so called "meal period."

142.   Thus, QualTek knew, should have known, or recklessly disregarded whether it failed to pay Dodge and the other Hourly Employees for all the hours they performed compensable work.

143.   QualTek knew the California Labor Code and applicable IWC Wage Orders required it to provide employees, including Dodge and the other California Plaintiffs, with 10-minute, duty free rest periods every 4 hours worked or major fraction thereof.

144.   QualTek knew the California Labor Code and applicable IWC Wage Orders required it to pay employees, including Dodge and the other California Plaintiffs, one hour of premium pay for each day they are denied a compliant rest period.

145.   QualTek knew Dodge and the other California Plaintiffs did not receive compliant rest periods.

146.   Nonetheless, QualTek did not pay Dodge and the other California Plaintiffs one hour of premium pay each day it denied them a compliant rest period.

147.   QualTek's failure to provide Dodge and the other California Plaintiffs with compliant rest periods was neither reasonable nor was its decision not to pay these employees one hour of premium pay each day it denied them a compliant rest period made in good faith.

148.   QualTek knew it paid the Hourly Employees non-discretionary retention bonuses.

149.   QualTek knew these bonuses constituted part of the Hourly Employees' wages and compensation.

150.     QualTek knew these bonuses should have been included in the Hourly Employees' regular rates of pay for the purpose of calculating overtime.

151.     Nonetheless, QualTek excluded the Hourly Employees' bonuses from their regular rates of pay.

152.     QualTek knew it paid its Hourly Employees per diems.

153.     QualTek knew these per diems constituted part of its Hourly Employees' wages and compensation for work.

154.     QualTek knew these per diems should have been included in the Hourly Employees' regular rates of pay for the purpose of calculating overtime.

155.     Nonetheless, QualTek excluded the Hourly Employees' per diems from their regular rates of pay.

156.     QualTek knew the California Labor Code and applicable IWC Wage Orders required it to provide Dodge and the other California Plaintiffs with accurate itemized wage statements.

157.     Nonetheless, QualTek knew the wage statements it provided to Dodge and the other California Plaintiffs did not accurately reflect their actual hours worked, their actual wages earned, their actual overtime wages earned, their actual double-time wages earned, their actual gross and net wages earned, and/or their premium pay for missed meal and rest periods.

158.     QualTek's failure to provide Dodge and the other California Plaintiffs with accurate wage statements was neither reasonable nor was its decision not to provide these employees with accurate wage statements made in good faith.

159.     QualTek knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated the FLSA, California Labor Code, and applicable IWC Wage Order(s).

160.     QualTek knowingly, willfully, and/or in reckless disregard carried out its illegal policies that systematically deprived Dodge and the other Hourly Employees of their earned overtime wages in violation of the FLSA.

161.     QualTek knowingly, willfully, and/or in reckless disregard carried out its illegal

policies that systematically deprived Dodge and the other California Plaintiffs of their earned wages, overtime wages, double time wages, rest and meal periods, premium pay for missed rest and meal periods, and accurate wage statements in violation of the California Labor Code and applicable IWC Wage Order(s).

162.    In sum, QualTek's violations were willful, carried out in bad faith, and caused significant damage to Dodge and the other Hourly Employees.

### COUNT I

#### FAILURE TO PAY FOR ALL HOURS WORKED

#### PURSUANT TO CAL. LAB. CODE § 204

163.    Dodge realleges and incorporates all other paragraphs by reference.

164.    Dodge brings his earned wages claim under the California Labor Code and IWC Wage Order(s) in his individual capacity, as does any other California Plaintiff who submits their written consent to join this action pursuant to 29 U.S.C. § 216(b).

165.    At all relevant times, QualTek was subject to the Labor Code and applicable Wage Order(s) because QualTek was (and is) an "employer" within the meaning of the Labor Code and applicable Wage Order(s).

166.    At all relevant times, QualTek employed Dodge and the other California Plaintiffs as its covered "employees" within the meaning prescribed in the Labor Code.

167.    Labor Code § 204 provides in relevant part that "all wages … earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular payday."

168.    Labor Code § 1194(a) provides as follows:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

169.    Labor Code § 200(a) defines wages as "all amounts for labor performed by

employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."

170.    Labor Code § 1198 makes it unlawful for employers to employ employees under conditions that violate the Wage Orders.

171.    IWC Wage Order 4-2001(2)(K) defines hours worked as "the time during which an employee is subject to the control of an employer and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

172.    QualTek willfully engaged in and continues to engage in a policy and practice of not compensating Dodge and the other California Plaintiffs for all hours worked or spent in QualTek's control.

173.    QualTek requires Dodge and the other California Plaintiffs to perform compensable work "off the clock," including during their so called, "off the clock" meal periods.

174.    In other words, Dodge and the other California Plaintiffs are forced to perform work for QualTek's benefit without compensation during their "off the clock" meal periods.

175.    QualTek knowingly and willfully refuses to perform its obligations to provide Dodge and the other California Plaintiffs with compensation for all time worked.

176.    QualTek's unlawful conduct harmed Dodge and the other California Plaintiffs by depriving them of their wages for all hours worked, which they are owed under California law.

177.    Despite having knowledge or the ready ability to gather knowledge of the precise number of hours worked using basic diligence, QualTek regularly fails to compensate Dodge and the other California Plaintiffs for all hours worked.

178.    As such, QualTek committed, and continues to commit, the acts alleged herein knowingly and willfully, and in conscious disregard of Dodge's and the other California Plaintiffs' rights.

179.    Accordingly, Dodge and the other California Plaintiffs are thus entitled to recover nominal, actual, liquidated, and compensatory damages, plus interest, attorneys' fees, expenses, and costs of suit.

### COUNT II

**FAILURE TO PAY OVERTIME & DOUBLE TIME**

**PURSUANT TO CAL. LAB. CODE § 510**

180.   Dodge realleges and incorporates all other paragraphs by reference.

181.   Dodge brings his overtime and double time claims under the California Labor Code and IWC Wage Order(s) in his individual capacity, as does any other California Plaintiff who submits their written consent to join this action pursuant to 29 U.S.C. § 216(b).

182.   At all relevant times, QualTek was subject to the Labor Code and applicable Wage Order(s) because QualTek was (and is) an "employer" within the meaning of the Labor Code and applicable Wage Order(s).

183.   At all relevant times, QualTek employed Dodge and the other California Plaintiffs as its covered "employees" within the meaning prescribed in the Labor Code.

184.   Dodge and the other California Plaintiffs are entitled to overtime and double-time pay – based on all remuneration – under the Labor Code and applicable Wage Orders.

185.   Labor Code § 510(a) provides:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

186.   IWC Wage Order 17-2001(4) states that employees:

> . . . shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1½) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than … [o]ne and one-half (1½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek….

187.    Labor Code § 1194(a) provides:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

188.    Labor Code § 1198 makes it unlawful for employers, like QualTek, to employ employees, including Dodge and the other California Plaintiffs, under conditions that violate the IWC Wage Order(s).

189.    Despite regularly working over 8 hours a day and/or 40 hours in a workweek as part of their normal and regular schedules, QualTek did not pay Dodge and the other California Plaintiffs overtime wages for all overtime hours worked, including those worked "off the clock."

190.    Despite occasionally working over 12 hours a day with QualTek's knowledge of such work, QualTek did not pay Dodge and the other California Plaintiffs double-time wages for all double-time hours worked, including those worked "off the clock."

191.    QualTek's unlawful conduct harmed Dodge and the other California Plaintiffs by depriving them of the overtime and double-time wages they are owed under California law.

192.    Accordingly, QualTek owes Dodge and the other California Plaintiffs the unpaid balance of the full amount of overtime and double-time wages owed and interest at the highest applicable rates.

193.    Finally, QualTek is also liable to Dodge and the other California Plaintiffs for their reasonable attorneys' fees and costs incurred in this action.

<u>COUNT III</u>

**FAILURE TO AUTHORIZE, PERMIT, AND/OR MAKE AVAILABLE REST PERIODS**

**PURSUANT TO CAL. LAB. CODE §§ 226.7 AND 512**

194.    Dodge realleges and incorporates all other paragraphs by reference.

195.    Dodge brings his meal and rest period claim under the California Labor Code and IWC Wage Order(s) in his individual capacity, as does any other California Plaintiff who submits their written consent to join this action pursuant to 29 U.S.C. § 216(b).

196.   At all relevant times, QualTek was subject to the Labor Code and applicable Wage Orders.

197.   At all relevant times, QualTek was Dodge's and each California Plaintiff's "employer" within the meaning prescribed in the Labor Code.

198.   At all relevant times, Dodge and each California Plaintiff was QualTek's "employee" within the meaning prescribed in the Labor Code.

199.   At all relevant times, Dodge and the other California Plaintiffs were entitled to compliant, *bona fide* meal and rest periods under the California Labor Code and applicable IWC Wage Order(s).

200.   Sections 226.7 and 512 of the California Labor Code and applicable IWC Wage Order(s) require employers, like QualTek, to authorize and permit meal and rest periods to their employees, including Dodge and the other California Plaintiffs.

201.   Specifically, Sections 226.7 and 512 of the California Labor Code and applicable IWC Wage Order(s) require employers, like QualTek, to provide employees, including Dodge and the other California Plaintiffs, one uninterrupted 30-minute meal period when they work more than 5 hours per day and a second uninterrupted 30-minute meal period when they work more than 10 hours in day.

202.   Similarly, Section 226.7 of the California Labor Code and the applicable Wage Orders, also requires employers, like QualTek, to authorize and permit employees, including Dodge and the other California Plaintiffs, to take 10 minutes of rest time per 4 hours (or major fraction thereof) of work, and to pay employees their full wages during those rest periods.

203.   Unless employees are relieved of all duties during their 30-minute meal period(s) and 10-minute rest period(s), the employees are considered "on duty," and the meal/rest period must be counted as time worked under the applicable IWC Wage Order(s).

204.   Pursuant to Section 226.7(b) of the California Labor Code and applicable IWC Wage Order(s), employers, like QualTek, who fail to provide an employee with a required meal and/or rest period must, as compensation, pay the employee one hour of pay at the employee's regular rate for each day that the meal and/or rest period was not authorized or permitted.

205.    At all relevant times, QualTek routinely failed to make meal periods available to Dodge and the other California Plaintiffs.

206.    Despite long days regularly lasting in excess of 8, and occasionally 12 hours, Dodge and the other California Plaintiffs are regularly unable to take a meal period, prevented from timely taking a meal period, are otherwise subject to interruption during their meal periods, and are frequently interrupted during their attempted meal periods.

207.    Dodge and the other California Plaintiffs are not paid one hour of premium pay for their missed meal periods as required by California law.

208.    Similar to meal periods, at all relevant times, QualTek regularly fails to make rest periods available to Dodge and the other California Plaintiffs.

209.    When available, if ever, Dodge's and the other California Plaintiffs' rest periods were often not compliant, but rather, were generally untimely and/or short.

210.    Dodge and the other California Plaintiffs do not receive premium pay for their missed rest periods as required by California law.

211.    QualTek's unlawful conduct harmed Dodge and the other California Plaintiffs by depriving them of compliant meal and rest periods, as well as premium pay.

212.    QualTek knowingly, willfully, or in reckless disregard carried out this pattern or practice of failing to provide Dodge and the other California Plaintiffs compliant meal and rest periods and required premium pay for missed meal and rest periods.

213.    Accordingly, Dodge and the other California Plaintiffs are entitled to compensation for QualTek's failure to authorize, permit, and/or make available meal and rest periods, plus interest, attorneys' fees, expenses and costs of suit.

## COUNT IV

### FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS

### PURSUANT TO CAL. LAB. CODE § 226

214.    Dodge realleges and incorporates all other paragraphs by reference.

215.    Dodge brings his wage statement claim under the California Labor Code and IWC Wage Order(s) in his individual capacity, as does any other California Plaintiff who submits their

written consent to join this action pursuant to 29 U.S.C. § 216(b).

216. At all relevant times, QualTek was subject to the Labor Code and applicable Wage Order(s) because QualTek was (and is) an "employer" within the meaning of the Labor Code and applicable Wage Order(s).

217. At all relevant times, QualTek employed Dodge and the other California Plaintiffs as its covered "employees" within the meaning prescribed in the Labor Code.

218. Labor Code § 226(a) provides:

> An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing: (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee …. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

219. The applicable Wage Order(s) establish similar wage statement requirements.

220. Labor Code § 226(e) provides:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorneys' fees.

– 22 –

221.    As a result of its aforementioned illegal practices, QualTek does not provide timely, accurate itemized wage statements to Dodge and the other California Plaintiffs, in violation of Labor Code § 226(a) and the applicable Wage Order(s).

222.    Specifically, the wage statements QualTek provides Dodge and the other California Plaintiffs do not accurately reflect their actual hours worked, their actual gross wages earned, their actual overtime wages earned, their actual double time wages earned, their premium pay earned, or their actual net wages earned.

223.    QualTek's unlawful conduct harmed Dodge and the other California Plaintiffs by depriving them of the accurate wage statements they are entitled to under California law.

224.    Accordingly, QualTek is liable to Dodge and the other California Plaintiffs for the amounts described above, plus interest.

225.    Finally, QualTek is also liable to Dodge and the other California Plaintiffs for their reasonable attorneys' fees and costs incurred in this action pursuant to Labor Code § 226(e).

### COUNT V

### WAITING TIME PENALTIES

### PURSUANT TO CAL. LAB. CODE §§ 201-203

226.    Dodge realleges and incorporates all other paragraphs by reference.

227.    Dodge brings his waiting time penalties claim under the California Labor Code and IWC Wage Order(s) in his individual capacity, as does any other California Plaintiff who submits their written consent to join this action pursuant to 29 U.S.C. § 216(b).

228.    At all relevant times, QualTek was subject to the Labor Code and applicable Wage Order(s) because QualTek was (and is) an "employer" within the meaning of the Labor Code and applicable Wage Order(s).

229.    At all relevant times, QualTek employed Dodge and the other California Plaintiffs as its covered "employees" within the meaning prescribed in the Labor Code.

230.    Labor Code § 201 provides: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

231.   Labor Code § 202 provides: "If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting."

232.   Labor Code § 203 provides, in relevant part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

233.   Dodge and some of the other California Plaintiffs have left their employment with QualTek, at which time QualTek owed them unpaid wages.

234.   These earned, but unpaid, wages derive from the unpaid earned wages, overtime pay, double time pay, and premium pay QualTek owes Dodge and the other California Plaintiffs.

235.   QualTek willfully refused and continues to refuse to pay Dodge and the other California Plaintiffs all wages due and owing to them, in the form of earned wages, overtime pay, double time pay, and premium pay, upon the end of their employment as a result of QualTek's illegal policies.

236.   QualTek's unlawful conduct harmed Dodge and the other Hourly Employees by depriving them of the earnings and interest they are owed under California law.

237.   Accordingly, QualTek is liable to Dodge and other Hourly Employees for all penalties owing pursuant to Labor Code §§ 201-203.

238.   Labor Code § 203 provides that an employee's wages will continue as a penalty up to 30 days from the time the wages were due.

239.   Therefore, Dodge and other Hourly Employees are entitled to penalties pursuant to Labor Code § 203, plus interest.

## COUNT VI

### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

240.    Dodge realleges and incorporates all other paragraphs by reference.

241.    Dodge brings his FLSA claim as a collective action on behalf of himself and the Hourly Employees pursuant to 29 U.S.C. § 216(b).

242.    QualTek violated, and is violating, the FLSA by failing to pay Dodge and the Hourly Employees overtime compensation at rates not less than 1.5 times these employees' regular rates of pay – based on all remuneration – for all hours worked in excess of 40 in a workweek, including hours worked "off the clock"

243.    Throughout the relevant period, QualTek failed to pay Dodge and the Hourly Employees for hours worked, including hours worked in excess of 40 in a workweek, in accordance with its meal break policies.

244.    But throughout the relevant period, QualTek expected and required Dodge and the Hourly Employees to work "off the clock," in accordance with its meal break policies.

245.    Throughout the relevant period, QualTek paid Dodge and the Hourly Employees nondiscretionary bonuses and per diems that QualTek excluded from these employees' regular rates of pay.

246.    By excluding this remuneration from Dodge's and the Hourly Employees' regular rates of pay, QualTek failed to pay all overtime wages owed under the FLSA.

247.    Dodge and the Hourly Employees have been harmed as a direct and proximate result of QualTek's unlawful conduct because they have been deprived of overtime wages owed – at the correct overtime rate of pay – for work they performed and from which QualTek derived a direct and substantial benefit.

248.    QualTek knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Dodge and the Hourly Employees overtime compensation for all overtime hours worked at the correct rate of pay.

249.    QualTek's failure to pay Dodge and the Hourly Employees all overtime compensation owed for all overtime hours worked was neither reasonable, nor was the decision

– 25 –

1   not to pay these employees all overtime compensation owed for all overtime hours worked made

2   in good faith.

3        250.    Accordingly, Dodge and the Hourly Employees are entitled to recover their unpaid

4   overtime wages under the FLSA, plus an equal amount as liquidated damages, and attorneys'

5   fees and costs.

6   **RELIEF SOUGHT**

7       WHEREFORE, Dodge, individually and on behalf of the other Hourly Employees, and

8   California Plaintiffs seek the following relief:

9       a.    An Order designating this lawsuit as a collective action and permitting

10      issuance of notice to all Hourly Employees with instructions to permit

11      them to assert timely FLSA claims in this Action by filing individual

12      written consents to sue pursuant to 29 U.S.C. § 216(b);

13      b.    An Order appointing Dodge and his counsel to represent the interests of

14      the Hourly Employees;

15      c.    Damages and restitution according to proof at trial for all unpaid wages

16      and other injuries, as provided by the Labor Code;

17      d.    For a Declaratory Judgment that QualTek violated the FLSA, the Labor

18      Code, California law, and pubic policy as alleged herein;

19      e.    An Order pursuant to Section 16(b) of the FLSA finding QualTek liable

20      for unpaid back wages due to Dodge and the Hourly Employees;

21      f.    An Order pursuant to Section 16(b) of the FLSA finding QualTek liable

22      for liquidated damages equal in amount to their compensatory damages;

23      g.    An Order finding QualTek liable to Dodge and the other California

24      Plaintiffs for their unpaid wages, overtime wages, double-time wages,

25      liquidated damages, statutory damages, and any other penalties owed

26      under the California Labor Code and applicable IWC Wage Order(s);

27      h.    Judgment awarding Dodge and the Hourly Employees all unpaid

28      overtime and other damages available under the FLSA;

1        i.     For an equitable accounting to identify, locate, and restore all current

2             and former employees the wages and compensatory damages they are

3             due, with interest thereon at the highest rates allowable by law;

4        j.     Judgment awarding Dodge and the other California Plaintiffs all unpaid

5             wages, overtime wages, double time wages, liquidated damages,

6             statutory damages, and any other penalties available under the

7             California Labor Code and applicable IWC Wage Order(s);

8        k.     An Order awarding attorney's fees, costs, and expenses as provided by

9             the  FLSA, Labor Code, Code of Civil Procedure § 1021.5, the laws of

10           the State of California, and/or other applicable law;

11        l.     Pre- and post-judgment interest at the highest applicable rates; and

12        m.    Such other and further relief as may be necessary and appropriate.

Date: January 8, 2025          Respectfully submitted,

*/s/ William M. Hogg*
William M. Hogg
**JOSEPHSON DUNLAP LLP**

*Counsel for Dodge, California Plaintiffs,*
*and the Hourly Employees*

SECOND AMENDED COLLECTIVE ACTION COMPLAINT AND JURY DEMAND
*Dodge v. Qualtek Wireless, LLC*, Case No. 2:25-CV-00043-DAD-AC

**DEMAND FOR JURY TRIAL**

Dodge hereby demands a jury trial on all claims and issues, as he and the other Hourly Employees and California Plaintiffs are entitled to a jury.

Date: January 8, 2025                    Respectfully submitted,


                                         /s/ William M. Hogg
                                         William M. Hogg
                                         **JOSEPHSON DUNLAP LLP**

                                         *Counsel for Dodge, California Plaintiffs,*
                                         *and the Hourly Employees*


**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed with the Clerk of the Court for the United States District Court for the Eastern District of California using the Court's CM/ECF system on January 8, 2025, which will effectuate service on all parties that have made an appearance.

                                         /s/ William M. Hogg
                                         William M. Hogg